**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vincent S Simpson, | No. CV-24-00296-TUC-JGZ |
| Petitioner, | **ORDER** |
| v. | |
| Ryan Thornell, | |
| Respondent. | |

Pending before the Court is Petitioner Vincent Simpson's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. 6.) Respondents filed a Limited Answer to the Petition (Doc. 15), and Simpson replied (Doc. 16). The Court will dismiss the Petition because it is untimely.

**I.     BACKGROUND**

The factual background is set forth in the Arizona Court of Appeals decision.[1] *See State v. Simpson*, No. 2 CA-CR 2016-0155, 2017 WL 1207407, ¶ 2 (Ariz. Ct. App. Mar. 31, 2017).

> In July 2014, Simpson met then twelve-year-old T.N. and ten-year-old J.B. after introducing himself to their mother, M.C., in a grocery store parking lot in Nogales, Arizona. Later, Simpson offered to watch T.N. and J.B. while M.C. ran errands. M.C. was initially reluctant to agree but did so after Simpson introduced her to his mother and grandmother, with whom he lived, and provided M.C. with a "collection notice"

---

[1] The determination of facts by the state court is afforded a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007).

> with his "information on it."
>
> Later that day, Simpson told M.C. he wanted to take the boys to a birthday party in Rio Rico at his aunt's house. They agreed that M.C. would pick the boys up the following morning from Simpson's house. Simpson also told M.C. he would give the boys his cell phone so they so they [sic] could call M.C. at any point.
>
> Simpson did not take the boys to the party. One of Simpson's friends arrived with "two kids," and the group smoked marijuana. Simpson eventually took the boys back to his house and instructed them to enter his bedroom through the window, while he entered through the front door.
>
> Once inside Simpson's bedroom, he kissed the boys' foreheads, told them he "love[d]" them, asked the boys to touch his genitals, asked to touch the boys' genitals, asked the boys to touch each other's genitals, asked the boys to perform oral sex on him, and told the boys he wanted them to have sex with him. At one point, he brought a television into the room and began playing pornographic videos. Simpson also put a sock in a hole in the door created by a missing doorknob and put "boxes and bags of clothes and his dresser in front of the door." The boys asked to call their mother several times, but Simpson would not give them his phone.

*Simpson*, No. 2 CA-CR 2016-0155, 2017 WL 1207407, ¶¶ 2–5.

Simpson was charged with two counts of kidnapping, eight counts of luring a minor for sexual exploitation, eight counts of attempted sexual conduct with a minor, two counts of furnishing harmful items to a minor, two counts of transfer of marijuana, and two counts of involving or using a minor in a drug offense. *Id.* ¶ 6. Before trial, the two counts of involving or using a minor in a drug offense were dismissed on the state's motion. *Id.* During trial, two of the attempted sexual conduct with a minor charges were dismissed on the state's motion. *Id.* A jury found Simpson guilty of the remaining charges. *Id.* The trial court sentenced Simpson to consecutive and concurrent terms of imprisonment, totaling fifty-four years. *Id.*

**II.    PROCEDURAL HISTORY**

A. Direct Appeal

Simpson timely appealed his conviction to the Arizona Court of Appeals on March 28, 2016. (Doc. 15-1 at 288, Ex. AA.) He presented two issues for review: (1) whether the trial court erred by ruling that evidence of a prior sexual act was admissible; and (2)

whether the trial court erred by denying his motion for mistrial due to prosecutorial misconduct. *See Simpson*, 2017 WL 1207407, ¶¶ 7, 22. On March 31, 2017, the Arizona Court of Appeals affirmed Simpson's convictions and sentences. *Id.* ¶ 34. On July 13, 2017, the Arizona Court of Appeals issued its mandate stating the time for filing a motion for reconsideration or petition for review with the Arizona Supreme Court had expired. (Doc. 15-1 at 133, Ex. E.) Simpson took no further action on direct appeal.[2]

B. Post-Conviction Relief

Simpson filed his first Notice of Post-Conviction Relief ("First PCR Notice") on September 28, 2017, claiming ineffective assistance of counsel ("IAC"). (Doc. 15-1 at 136–39, Ex. F.) Simpson did not provide the basis for his IAC claim. Simpson also filed a Request for Preparation of Post-Conviction Relief Record. (Doc. 15-1 at 140–43, Ex. G.) The court dismissed Simpson's First PCR Notice on July 3, 2018, for failure to timely file a Supplemental Pro Se Rule 32 Petition. (Doc. 15-1 at 151, Ex. I.)

On February 20, 2019,[3] Simpson filed a PCR Notice and Request for all Documents and Exhibits for Appeal ("Second PCR Notice"). (Doc. 15-1 at 152–61, Ex. J.) Simpson stated he was unable to file a brief in the First PCR because he was not supplied with certain trial records. (*Id.* at 153.)

On April 25, 2019, the PCR court affirmed its July 3, 2018 dismissal of the First

---

[2] Simpson asserts that he appealed the Arizona Court of Appeals' March 13, 2017 decision to the Arizona Supreme Court in March 2016 and also that he filed a petition for writ of certiorari to the U.S. Supreme Court in April 2019. (Doc. 6 at 3.) The record does not support these claims. The mandate issued by the court of appeals expressly states that Simpson failed to timely file a petition for review or motion for reconsideration of the March 31, 2017 decision. (Doc 15-1 at 133, Ex. E.) No filing is found on the Supreme Court docket. Further, the Supreme Court may review a decision from "the highest court of a State in which a decision could be had," 28 U.S.C. § 1257(a), but Simpson did not seek or obtain a ruling from the Arizona Supreme Court—Arizona's highest court.

[3] In its order dismissing the Second PCR Notice, the court stated the Second Notice was filed on March 11, 2019. (Doc. 15-1 at 167, Ex. L.) Arizona's prisoner mailbox rule deems "the filing date to be the date when the document was delivered to jail or prison authorities to deposit in the mail." Ariz. R. Crim. P. 1.7(b)(4). The last page of the Second PCR Notice shows Simpson signed the notice, under penalty of perjury, on February 20, 2019, and signed that he "mailed" the document on February 5, 2019. (Doc. 15-1 at 161, Ex. J.) Clearly, the February 5th mailing date cannot be correct if Simpson did not sign the document until February 20, 2019. Determination of the exact filing date is not relevant to this Court's analysis as Simpson's Petition for Habeas Corpus is untimely under any of the three dates. The Court uses the February 20, 2019 date as it is the most favorable, plausible date.

PCR. (Doc. 15-1 at 166–68, Ex. L.) The court explained that Simpson's First PCR petition was due 60 days after filing of his First PCR Notice on September 28, 2017; Simpson did not seek an extension of the deadline; transcripts and pleadings were mailed by the court to Simpson on December 13, 2017; and Simpson did not seek an extension thereafter or seek relief from the court's dismissal dated July 3, 2018. (*Id*. at 167.) The court concluded Simpson failed to comply with the time requirements of Rule 32.4(c)(2) of the Arizona Rules of Criminal Procedure, and no extraordinary circumstances justified an extension of the Rule 32 deadlines. (*Id.* at 167–68.)

### C. Federal Habeas Corpus Petition

On June 11, 2024, Simpson filed a pro se "Petition for Direct Collateral Review Under 28 U.S.C. § 1257(a)." (Doc. 1.) In an August 21, 2024 Order, the Court construed the Petition for Direct Collateral Review as a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, dismissed the petition with leave to amend, and gave Simpson 30 days to file an amended petition on a court-approved form. (Doc. 5.)

On September 10, 2024, Simpson filed the pending Amended § 2254 Petition ("Petition") naming Ryan Thornell and the Arizona Attorney General as Respondents. (Doc. 6.) In a screening order, the Court found Simpson raised three possible grounds for relief:

> In Ground One, Petitioner appears to claim that his due process rights and right to counsel were violated when his sentencing attorney "only objected on a few issues" and "failed to object when the State prosecutor manipulated the 'alle[]ged accusers[']' statements."
>
> In Ground Two, Petitioner alleges that his due process rights were violated when he was vindictively prosecuted and that his due process rights and right to counsel were violated when his trial counsel failed to object to and the trial court failed to suppress the victims' statements, which were "inconsistent, 'made-up' and completely contradictory to each other[]."
>
> In Ground Three, Petitioner appears to allege that he was subjected to double jeopardy as a result of, and received ineffective assistance of counsel with respect to, his indictment, which was duplicitous, constructively amended, and issued without probable cause.

(Doc. 10 at 2–3.)

On January 16, 2025, Respondents filed a Limited Answer arguing the Petition is

time-barred and Simpson's claims are procedurally defaulted. (Doc. 15.)[4]

## III. DISCUSSION

Federal district courts may entertain habeas applications on behalf of persons in custody pursuant to state court judgments "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A court may not grant habeas relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "A decision involves an 'unreasonable application' of clearly established federal law . . . if it 'identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Vega v. Ryan*, 757 F.3d 960, 965 (9th Cir. 2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court's factual finding is not unreasonable simply because the federal habeas court reaches a different conclusion. *Id.* Courts presume that the state court's factual findings are correct unless the petitioner "rebuts the presumption of correctness by clear and convincing evidence." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In analyzing a § 2254 petition, review is limited to the record that was before the state court that adjudicated the merits of the claim. *Pinholster*, 563 U.S. at 181.

Whether a petition is time-barred is a threshold issue that must be resolved before considering other procedural issues. *See White v. Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002) (affirming the dismissal of the habeas petition for untimeliness, without reaching the procedural default grounds that the district court dismissed the petition on). The Anti-

---

[4] On January 29, 2025, Simpson filed a document entitled "Object and Controvert the Limited Answer," in which he requests an evidentiary hearing and mistakenly asserts Respondents were ordered to answer his initial § 1257 pleading on its merits. (Doc. 16.)

Terrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations applies here. *See* 28 U.S.C. § 2244(d)(1); *Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir. 1999). The limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The time during which a properly filed application for State post-conviction or other collateral review is pending is not counted toward the limitations period. *Id.* § 2244(d)(2).

The Arizona Court of Appeals affirmed Simpson's convictions and sentences on March 31, 2017. Because Simpson did not file a petition for review in the Arizona Supreme Court, Simpson's convictions became final 30 days later, on April 30, 2017, when the time for filing a petition for review expired. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007) (holding in Arizona, a direct appeal is final upon the expiration of the time for seeking review of the court of appeals' decision in the Arizona Supreme Court); *see also* Ariz. R. Crim. P. 31.21(b)(2)(A) ("A party must file a petition for review no later than 30 days after the Court of Appeals enters its decision, unless a party files a timely motion for reconsideration in the Court of Appeals . . . ."). Thus, absent tolling, the statute of limitations expired one year later, on May 1, 2018. *See* Fed. R. Civ. P. 6(a); *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying the "anniversary method" to calculate the end an AEDPA limitations period).

The limitations period ran 149 days,[5] from May 1 to September 27, 2017, the day before Simpson filed his First PCR notice. The limitations period was tolled 280 days—from September 28, 2017, to July 5, 2018—while the action was pending. *See* 28 U.S.C. § 2244(d)(2). The limitations period began to run again on July 6, 2018, and expired 216 days later, on February 7, 2019.[6] Simpson failed to file his Petition for Habeas Corpus until

---

[5] Respondents state the limitations period ran 77 days. (Doc. 15 at 6.) It appears Respondents mistakenly utilized July 13, 2017—the date on which the mandated issued—rather than April 30, 2017—the date the decision became final, as the start date for their calculation; Respondents had correctly stated the limitations period should be calculated from the date Simpson's conviction became final. (*Id.* at 5–6.)

[6] The limitations period was not tolled by Simpson's filing of the Second PCR on March 11, 2019. The Second PCR was untimely and therefore not properly filed. *See* 28 U.S.C. § 2244(d)(2) (providing for tolling of limitations period while "properly filed application for

June 11, 2024, more than five years later. The Petition therefore is untimely.

A. Equitable Tolling

In his Petition, Simpson was required to explain why the one-year statute of limitations does not bar his Petition. (Doc. 6 at 11.)[7] Simpson responded: "Due to the Tolling Process and the COVID-19 Restrictions." (*Id.*) Equitable tolling is not warranted in the circumstances presented.

To be entitled to equitable tolling a petitioner must affirmatively demonstrate that: (1) he diligently pursued his rights; and (2) some extraordinary circumstance beyond his control stood in his way. *See Pace*, 544 U.S. at 418. "The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (citations and internal quotations omitted). "[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)). Although pro se status alone does not warrant equitable tolling, "it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence." *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("This court recognizes that it has a duty to ensure that pro

---

State post-conviction or other collateral review" is pending). When the state court rejects a petition for post-conviction relief as untimely, it is not "properly filed" and does not toll the limitations period under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).
    It could be argued that Simpson's First PCR application also was not "properly filed" because its delivery and acceptance was not "in compliance with the applicable laws and rules governing filings," *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), although Respondents do not present this argument. Simpson timely filed the First PCR Notice, but because he failed to timely file the PCR petition, which was due 60 days later, the PCR court dismissed the action as untimely. (Doc. 15-1 at 167); *see Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (holding petitioner's "untimely petition must be treated as improperly filed, or as though it never existed, for purposes of section 2244(d)"); *Bonner v. Carey,* 425 F.3d 1145, 1149 (9th Cir. 2005) ("Under *Pace*, if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled."), *amended*, 439 F.3d 993 (9th Cir. 2006).
[7] Question 16 of the form Petition reads: "TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition." (Doc. 6 at 11.) The form includes the section 2244(d) language. (*Id.*)

se litigators do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.")).

Simpson fails to show that he has met the high threshold necessary to excuse his untimely filing. Simpson has not acted with due diligence. He failed to file a petition in support of his First PCR filing and his Second PCR filing was untimely. Simpson did not ask for reconsideration of or appeal the court's dismissal of the two PCR actions and he fails to identify any extraordinary circumstances which prevented him from diligently pursuing those actions. While in some instances, COVID-19 precautions imposed on prisoners have warranted equitable tolling, habeas "petitioners must demonstrate or explain how they were diligent in pursuing their rights despite the restrictions." *Valles v. Allison*, No. 21-CV-0819-GPC-WVG, 2023 WL 2447520, at *8 (S.D. Cal. Mar. 10, 2023) (internal citations omitted); *United States v. Henry*, No. 20-cv-01821, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion."). Here, Simpson fails to show that COVID-19 restrictions affected his ability to timely file his habeas action. The limitations period for filing his Petition expired on February 7, 2019, more than a year before the onset of the COVID pandemic in March 2020.[8] Moreover, Simpon does not identify any COVID-19 restrictions that prevented the filing of his Petition after the pandemic began. Simpson is not entitled to equitable tolling; his Petition is time-barred.[9]

//
//
//
//
//

---

[8] *See* D. Ariz. General Order 20-10 (Mar. 13, 2020) (restricting Court operations in response to the COVID-19 emergency).
[9] Because the Court concludes that the Petition is untimely, it does not address the Respondents' additional argument that Simpson's claims are procedurally defaulted.

**IT IS THEREFORE ORDERED:**

1. Simpson's Petition for Writ of Habeas Corpus (Doc. 6) is **dismissed**. The Clerk of Court is directed to enter judgment and close its file in this action.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 4th day of August, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge